Lord v. Roberts.

---

ROSA L. LORD, EXECUTRIX, APPELLEE, v. JASPER ROBERTS, APPELLANT.

FILED DECEMBER 15, 1917. No. 19658.

1. **Highways:** ACTION FOR DAMAGES: INSTRUCTIONS. In an action to recover damages alleged to have been sustained because of an automobile accident, it is not reversible error for the court to instruct the jury by quoting so much of the statute as relates to the evidence.

2. **Trial:** INSTRUCTIONS. A judgment of the district court should not be reversed because of the failure of that court to embody all of the disputed questions of law in a single instruction. It is sufficient if the instructions considered together fairly and properly submit all disputed questions to the jury.

102 Neb.—4

3. **Trial:** CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS. It is the duty of
the court in a personal injury case where contributory negligence is
pleaded to instruct the jury in such a manner as to eliminate that
question where there is no evidence to sustain such a plea.

4. **Damages.** Evidence examined, and *held* sufficient to sustain the
judgment and that the same is not excessive.

APPEAL from the district court for Otoe county:
JAMES T. BEGLEY, JUDGE. *Affirmed.*

*William H. Pitzer* and *Edwin Zimmerer,* for appellant.

*Paul Jessen, contra.*

HAMER, J.

This action was brought in the district court for Otoe
county to recover damages sustained by the plaintiff,
which were alleged to have been caused by defendant's
negligence in driving his automobile upon a highway
in said county. There was a verdict for the plaintiff
for $595 and judgment was rendered upon it for that
sum. The defendant appeals. After the judgment
was rendered the plaintiff died, and the case was re-
vived in the name of his executrix, Rosa L. Lord.

It appears that on the 4th day of July, 1913, the
plaintiff was riding in a spring wagon with his son
and four other persons going west on the public road
from Syracuse, Nebraska, to the home of his son. They
had spent the day in Syracuse, and started for home
at about 9 o'clock in the evening. When they had
reached a point just east of what is known as Carper's
place, they met an automobile coming from the west,
and turned their team out on the right-hand side of
the road and clear to the north side of the traveled
portion of the highway, and there they stopped the
team to allow the automobile to pass. Just after the
automobile had passed the defendant came up from
behind the carriage. He was driving his car at about
20 to 25 miles an hour, and in attempting to pass he
struck the left hind wheel of the wagon which the plain-
tiff was riding in, and with such force as to wreck the

wheel, break the buggy tongue, and throw the driver of the team out over the dashboard of the wagon. The team ran away with the buggy in which the plaintiff and his daughter-in-law were riding. After the team had gone about half a mile the plaintiff was thrown to the ground, striking on his head, and thus received the injury of which he complains.

The record shows that the highway where the accident occurred was practically level and was in good condition. It appears that the driver of the wagon in which plaintiff was riding turned out to the north side of the road as far as he could, and that there was a space of 6 to 8 feet of clear way between the buggy and the middle of the traveled part of the highway, so that there was plenty of room for the passage of defendant's car if he had been looking and had been careful in attempting to avoid a collision with the buggy in which plaintiff was riding.

The evidence shows that there were weeds and also some brush consisting of ash sprouts on the side of the road where the team was standing, but we are unable to say that defendant's view was so obstructed that he could not have seen the team and wagon if he had been keeping the proper outlook. In fact defendant's wife saw the rig standing at the side of the road, and called attention to it when about 30 feet away. The foregoing is a brief statement of the facts leading to the injury.

Vincent Lord testified that the injury caused him to vomit and spit blood. Rosa L. Lord, the wife of Vincent Lord, testified that before the injury he had been able to do farm work, but that after the injury he sat in the rocking chair or was lying on the couch, and that he did no work in the field during the summers of 1914 and 1915. He appears to have coughed and spit blood whenever he tried to work, and was only able to feed the pigs and do chores. Other witnesses testified that after the injury Vincent Lord was unable

to eat breakfast and was spitting blood. He was weak and had to support himself by holding onto things.

It is contended by the defendant that the court erred in giving his third instruction to the jury. In that instruction the court defined the duties of the driver of an automobile on the streets or highways of this state by quoting such portions of the statute as he deemed applicable to the facts of the case. Without setting forth this instruction, it is sufficient to say that after a careful examination of it we fail to find any error therein.

Defendant next contends that the court erred in giving instruction No. 7 to the jury. The complaint made of this instruction is that the jury should have been told that defendant would not be liable for striking the wagon in which plaintiff was riding unless he knew or could have known by the exercise of reasonable care that the wagon was there in time to have avoided the collision. This assignment of error cannot be sustained, for in the second paragraph of the court's instructions defining negligence that question was completely covered.

Counsel for defendant contends that the court erred in the eighth instruction given because by that instruction the question of plaintiff's contributory negligence was withdrawn from the jury. As we view the record in this case the instruction was correct. It is difficult to see how the driver of the vehicle in which plaintiff was riding could have done anything other or more than he did in order to avoid the collision. He turned out on the proper side of the road for the purpose of allowing the automobile to pass him. He stopped his team at the extreme limit or north edge of the highway. In fact, he could have gone no farther than he did without getting into a deep ditch with his team, which would have resulted in disaster and subjected his family to injury thereby.

It is further contended that the fourteenth instruction is erroneous because it permitted the plaintiff to recover for future suffering. We think this instruction was a proper one considering the state of the evidence and in any event the amount of the verdict was so small that that matter could not have been considered by the jury.

Complaint is made of the refusal of the court to give certain instructions requested by the defendant. We have examined all of these instructions, and are satisfied that in view of those given by the court they were properly refused.

There seems to be no serious dispute about the speed at which the defendant was driving his car at the time of the accident. The defendant's wife, who was riding with him, testified on his behalf and stated that they were going so fast that she was uneasy about the speed. In *Blado v. Draper*, 89 Neb. 787, this court said: "The driver of an automobile upon a public street or highway, who, in attempting to pass a carriage from the rear, so carelessly and negligently handles his car as to strike the carriage and injure the occupant thereof, who is without fault, is liable for the injuries caused by such negligent act."

We have carefully examined the record and read the evidence, and it is our opinion that the case was fairly tried and properly submitted to the jury. We are unable to say that the verdict is excessive or that it is not sustained by the evidence. The judgment of the district court is therefore

AFFIRMED.

SEDGWICK, J., not sitting.