HULDA BURHOOP, APPELLEE, v. WAYNE BRACKHAN,
APPELLANT.

82 N. W. 2d 557

Filed April 19, 1957.   No. 34094.

*Wallace W. Angle,* for appellant.

*Kirkpatrick & Dougherty,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for York County. It involves an action wherein Hulda Burhoop sued Wayne Brackhan to recover damages resulting from injuries which she allegedly suffered in a car accident which, she claims, resulted from negligent conduct on the part of Brackhan. A jury returned a verdict in favor of Brackhan. Plaintiff thereupon filed a motion to set aside this verdict and for a new trial. The trial court sustained this motion, set aside the verdict, and granted plaintiff a new trial but gave no reason for doing so. It is from this order that this appeal was taken.

For convenience we shall herein refer to the parties as they appeared in the district court, that is, to appellant as defendant and to appellee as plaintiff.

The rule applicable here is stated in Gain v. Drennen, 160 Neb 263, 69 N. W. 2d 916, as follows: "In an action where the trial court has sustained a motion for a new trial without assigning reasons therefor, appropriate procedure on appeal is for the appellant to bring the record here with an assignment that the court erred in granting a new trial and submit it for critical examination. The duty then devolves upon the appellee to point out the prejudicial error which he contends justifies the granting of a new trial."

In this respect we said in Anderson v. Nielsen, 162

Neb. 110, 75 N. W. 2d 372, that: "Where a party has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured."

Plaintiff primarily contends the trial court erred in failing to take all questions of negligence away from the jury and submitting only the issue as to the amount of damages on the basis that defendant was, as a matter of law, guilty of negligence which was a proximate cause of the accident and resulting injuries to her.

It is true, as plaintiff contends, that she was, at the time of the accident, riding as a guest in a car being driven by her daughter, Gladys Naber, and consequently any negligence of her daughter could not be imputed to her. See Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757. Nor, under the factual situation as developed by the evidence adduced, can it be said she could be found guilty of any conduct constituting negligence which contributed to the accident and resulting injuries. See Bartek v. Glasers Provisions Co., Inc., 160 Neb. 794, 71 N. W. 2d 466. As stated in Bartek v. Glasers Provisions Co., Inc., *supra:* "Ordinarily, the guest passenger in an automobile has a right to assume that the driver is a reasonably safe and careful driver; and the duty to warn him does not arise until some fact or situation out of the usual and ordinary is presented."

If, as plaintiff contends, defendant was guilty of any negligence that was a proximate cause of the accident then he could be liable for, as stated in Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569: "Where the independent tortious acts of two persons combine to produce an injury indivisible in its nature, either tortfeasor may be held for the entire damage—not because he is responsible for the act of the other, but because his own act is regarded in law as a cause of the injury." See, also, O'Neill v. Rovatsos, 114 Neb. 142, 206 N. W. 752; Daniel-

sen v. Eickhoff, 159 Neb. 374, 66 N. W. 2d 913; Fick v. Herman, 161 Neb. 110, 72 N. W. 2d 598.

"Negligence is the doing of something which an ordinarily prudent person would not have done under the same or similar circumstances, or the failure to do something which an ordinarily prudent person would have done under the same or similar circumstances." Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710.

"Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred." Shupe v. County of Antelope, *supra.*

The trial court submitted the issue, pleaded by the defendant, that any injuries or damages sustained by plaintiff were solely and proximately caused by negligent acts of Gladys Naber, the driver of the automobile in which plaintiff was riding as a guest. If there is evidence to support this issue then, of course, it was proper for the court to submit it and, based thereon, it would be proper for a jury to find for defendant. See, Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673; Shiers v. Cowgill, 157 Neb. 265, 59 N. W. 2d 407; Ricker v. Danner, 159 Neb. 675, 68 N. W. 2d 338. As stated in Bergendahl v. Rabeler, *supra:* "Where the negligence of the driver of an automobile in which plaintiff is riding as a passenger is the sole proximate cause of a collision in which plaintiff is injured, plaintiff cannot recover from a third person for such injury."

"In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Remmenga v. Selk, *supra.* The same would be true with reference to a motion for a directed verdict or for judgment notwithstanding the verdict. See Stark v. Turner, *supra.*

"Where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury." Griess v. Borchers, 161 Neb. 217, 72 N. W. 2d 820.

"If there is any evidence which will sustain a finding for the party having the burden of proof in a cause the trial court may not disregard it and direct a verdict against him." Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496.

"The verdict of a jury, based on conflicting evidence, will not be disturbed unless clearly wrong." Griess v. Borchers, *supra.*

It is only "Where the verdict of a jury is clearly against the weight and reasonableness of the evidence, (that) it will be set aside and a new trial granted." Bentley v. Hoagland, 94 Neb. 442, 143 N. W. 465. See, also, Stewart v. City of Lincoln, 114 Neb. 362, 207 N. W. 511.

The accident wherein plaintiff was injured happened sometime between 4:45 and 5:30 p.m. on Monday, August 24, 1953, in the intersection of two country roads at a point 1 mile west and 2 miles south of Waco, in York County. It occurred when the front of a 1950 Tudor Ford, being driven by defendant, ran into the left side of a 1949 Buick sedan, being driven by Gladys Naber and in which plaintiff was riding as a guest. As a result of the impact the Ford came to an immediate stop, although the front end thereof was shoved toward the east. It remained upright and came to a stop, facing southeast, at a point in about the center of the intersection. The defendant was not hurt. The Buick, after the impact, continued on in a southeasterly direction some 54 feet and finally stopped in the ditch at the southeast corner of the intersection. It came to rest on its top with the front end facing to the north-northeast. It was in the ditch located along the south side of the east-west road. Plaintiff was thrown out of the car and apparently severely injured.

The roads creating the intersection were of equal dignity, the intersection being unprotected by signs of any kind. Just south of the intersection, on the east side of the traveled portion of the north-south road, was a sign advising the traveling public that the road to the south of the intersection was closed. However, the road to the south was not completely unusable and that fact was known to the defendant. The roads were dry, the sun was shining, and visibility was good.

Defendant, at the time, was driving south on the north-south road. This road is graveled north of the intersection. It had a 17-foot surface for travel on which the public had been driving down the center. Gladys Naber, at the time, was driving east on the east-west road. This road is graveled west of the intersection. It had a 16-foot surface for travel on which the public had been driving down the center. To the northwest of the intersection was a cornfield some 5 to 6 feet in height and at the corner were weeds some 4 to 5 feet in height. This created a blind northwest corner of which fact both drivers were fully aware, both being familiar with the road. However, back some 200 feet north of the intersection on the north-south road was a knoll from which cars could be observed traveling on the east-west road west of the intersection. From this knoll the north-south road slopes down slightly to the intersection. Likewise there is a knoll west of the intersection on the east-west road from which cars could be observed traveling on the north-south road north of the intersection. It is back about 500 feet. From this knoll the east-west road slopes down toward the intersection at about 20 degrees.

Gladys Naber, driver of the Buick, testified that as she approached the intersection from the west she was traveling between 35 and 40 miles an hour at the knoll some 500 feet to the west of the intersection; that she was familiar with the road and knew the intersection was dangerous so slowed her speed as she approached it

but did not apply her brakes; that she did not think anybody would be coming very fast from the north because of the fact that the road to the south was closed; that as she approached and entered the intersection at 30 miles an hour she first looked to the east and saw nothing, then looked to the south and saw the "road closed" sign of which she had previous knowledge, and then looked to the north when she saw the defendant's car just as it was about to hit her car; and that the car she was driving was hit on the left side when she was over half way across the intersection. She also testified she looked to her left, or north, when she first approached and entered the intersection but saw nothing coming from that direction.

Defendant testified that as he approached the intersection from the north he was traveling about 40 miles an hour as he came over the knoll; that he was intending to cross the intersection and go on south; that when he was about 140 to 150 feet from the intersection he was looking to the west and thought he saw a car or something on the west road; that he was then going about 35 miles an hour; that he immediately applied his brakes; that his car, including the brakes, was in good mechanical condition; that the application of his brakes caused the tires of his car to skid on the gravel; that he kept his brakes on and kept looking for the car on the west road; that he continued to look to the west and when he reached a point some 30 to 40 feet north of the intersection he thought he saw a car some 50 feet or so west of the intersection; that as he reached a point where he could see past the weeds located in the northwest corner he saw the Buick; that he continued to apply his brakes; that his car entered the intersection at a very reduced speed but he could not get it completely stopped before it hit the left side of the Buick at about the center thereof, although he had skidded his tires up to the point of impact, a distance of some 92 feet; that his car had very little forward movement

at the time the impact occurred; that the front of his car was shoved to the left as a result of the impact, but remained upright; and that it came to a stop a little past (south) the center of the intersection, facing southeast.

It is the plaintiff's thought that since the Buick approached the intersection from the right, and since the defendant admits it approached and entered the intersection first, that therefore the driver of the Buick had the right-of-way and defendant was guilty of negligence as a matter of law which was a proximate cause of the accident when he entered the intersection and ran into the side of the Buick car. It is true that defendant admitted the Buick was first in the intersection, although he also testified that the car he was driving was first to enter the intersection. There were facts and circumstances testified to that would justify a jury in finding that defendant's car entered the intersection first. However, for the purpose of the following discussion, we shall assume that the driver of the Buick had the right-of-way.

"In an action for damages for negligence the burden is on the plaintiff to show that there was a negligent act or omission by the defendant and that it was the proximate cause of plaintiff's injury or a cause which proximately contributed to it." Hansen v. Henshaw, 163 Neb. 191, 79 N. W. 2d 15.

Even though the driver of a car has the right-of-way at an intersection he still has duties in regard to other cars which are approaching and entering it at about the same time.

"A motorist entering an intersection from the right is in a favored position and has the right-of-way, other things being equal, but such fact does not do away with the duty of the driver of the favored car to exercise ordinary care to avoid an accident." Wendel v. Carlson, 162 Neb. 742, 77 N. W. 2d 212.

"The driver of an automobile, upon reaching an in-

tersection, has the right of way over a vehicle approaching on his left, and may ordinarily proceed to cross; but if the situation is such as to indicate to the mind of an ordinarily prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent accident, even to the extent of waiving his right." Thrapp v. Meyers, 114 Neb. 689, 209 N. W. 238, 47 A. L. R. 585.

When a driver of an automobile approaches or enters an intersection of two roads he is obliged to timely look for approaching vehicles and to see those within that radius which denotes the limit of danger. Kohl v. Unkel, 163 Neb. 257, 79 N. W. 2d 405; Elliott v. Swift & Co., 151 Neb. 787, 39 N. W. 2d 617.

"The duty of the driver of a vehicle about to enter a street intersection to look for vehicles approaching the same intersection implies the duty to see that which was in plain sight, unless some reasonable excuse for not seeing is shown." Bergendahl v. Rabeler, *supra*. See, also, Evans v. Messick, 158 Neb. 485, 63 N. W. 2d 491.

"One is required only to have his car under such reasonable control as to be able to avoid a collision with other vehicles whose drivers exercise due care. Complete control which is such as will prevent collision by the anticipation of negligence on the part of another in the absence of warning or knowledge is not required." Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669.

"Users of the highway are required to exercise reasonable care. What is reasonable care must in each case be determined by its own peculiar facts and circumstances." Lammers v. Carstensen, 109 Neb. 475, 191 N. W. 670.

We find the evidence adduced does not, as a matter of law, establish that defendant was negligent in the operation of his car. Under the facts disclosed by the record we think that reasonable minds could differ as to whether or not he was negligent and, if so, whether or

not such negligence was a proximate cause of the accident. In view thereof both are issues for the jury and the trial court was correct in submitting them.

The defendant pleaded that plaintiff's injuries were caused by negligent acts of Gladys Naber which were the sole and proximate cause thereof, setting out six specific items of negligence of which he claims she was guilty and which he claims were the proximate cause of the accident. The trial court submitted this issue, and we think properly in view of the evidence adduced, although we do not approve the instruction by which it was done.

Instruction No. 2 presented the issue of sole proximate cause, as pleaded, to the jury. It is as follows: "Defendant filed an answer in which he denied every material allegation in said petition and in which he alleged that any injuries or damages sustained by plaintiff were solely and proximately caused by the negligent acts of Gladys Naber, the driver of the automobile in which plaintiff was riding in that: 1. She failed to keep and maintain a proper lookout as she approached said intersection. 2. That she failed to keep her automobile under control. 3. That she was familiar with the road upon which she was traveling as well as the said intersection and knew or should have known that the intersection which they were about to enter was obstructed by weeds and growing corn but that despite such knowledge she failed to slacken the speed of her automobile as she approached said intersection or to make any observation of defendant's automobile until it was in the intersection itself. 4. That she operated her automobile at such a high, careless and negligent rate of speed that she could not control it nor stop nor turn aside in an attempt to avoid an accident with the automobile driven by defendant. 5. That she failed to grant defendant the right-of-way across the intersection, the defendant being in the intersection first. 6. That said accident was due entirely to the negligent conduct of the driver of

the car in which plaintiff was riding and was unavoidable insofar as the defendant is concerned. The defendant therefore asks that the petition of plaintiff be dismissed and her claims be denied."

By instruction No. 5 the trial court advised the jury that the issue of sole proximate cause of the accident, as it relates to Gladys Naber, was an affirmative defense and in order for the defendant to relieve himself of liability by reason thereof the burden of proof was upon him to prove that fact by the greater weight of the evidence. It is not an affirmative defense. See, Umberger v. Sankey, 151 Neb. 488, 38 N. W. 2d 21; Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854; Harding v. Hoffman, 158 Neb. 86, 62 N. W. 2d 333. As stated in Styskal v. Brickey, *supra:* "Such defense is not an affirmative plea in avoidance of appellee's cause of action and imposes no burden of proof upon appellant with relation thereto but is one entirely consistent with and provable under the general issue. However, some place in the instructions the jury should be advised that if it should find the sole proximate cause of the accident in which appellee was injured was the negligence of the driver of the car in which she was riding then its verdict should be for the appellant."

Although the court was in error in placing this burden on defendant it could work no prejudice to the plaintiff and consequently she is not in a position to complain thereof.

In relation to the six specifications of negligence which defendant alleged Gladys Naber was guilty of they must each find support in the evidence or otherwise it was prejudicial error for the court to have submitted them for, as stated in Koehn v. City of Hastings, 114 Neb. 106, 206 N. W. 19: "In stating the issues of fact in its charge to the jury, the court should submit to the jury only such issues as are presented by the pleadings and are in controversy, and which find some support in the evidence." We shall therefore examine the record with

reference to each of the specifications of negligence set out in instruction No. 2 to see if there was any evidence adduced to justify their submission.

Specification No. 1 relates to a failure on the part of Gladys Naber to maintain and keep a proper lookout as she approached the intersection. The evidence justifies the submission of this contention for a jury would be justified in finding that she did not.

Specification No. 2 relates to her failure to keep her automobile under control. Considering the circumstances of where and how the accident happened, the speed of her car, and the question of her maintaining a proper lookout, we think a jury would be justified in finding that she did not keep her automobile under control as she approached and entered the intersection.

Specification No. 3 relates partly to specification No. 1 and partly to the speed of her car as it approached and entered the intersection, describing it. We think a jury would be justified, in view of the evidence adduced, in finding she was negligent in entering this intersection at the speed she did and in failing to slacken her speed below 30 miles an hour as she did so.

Specification No. 4 relates to the rate of speed at which she approached and entered the intersection and her inability, because thereof, to control, stop, or turn aside her car in time to avoid the accident. We think the record justifies the submission of this specification. As stated in Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499: "What is a reasonable speed is necessarily largely dependent on the situation and the surrounding circumstances, it being obvious that a speed which would be safe, reasonable, and proper in some places and under some circumstances might be highly dangerous, unreasonable, and improper in other places and under other circumstances."

And in Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112, we said: "The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined

by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing."

Plaintiff complains primarily of the giving of specification No. 5 because, as she contends, defendant admitted on cross-examination that the Buick entered the intersection first. It is true that defendant so testified but he also testified otherwise and the physical facts, as well as the circumstances disclosed by other evidence adduced, support the latter. We think, in view of this situation, it was a question for the jury to determine as to which car actually entered the intersection first and had the right-of-way and that defendant was not conclusively bound as to that issue by the one statement he made. Nama v. Shada, 150 Neb. 362, 34 N. W. 2d 650; Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518; Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236. We think the correct rule is stated in 169 A. L. R. under the annotation of "Binding effect of party's own unfavorable testimony" under IV b, at page 805, as follows: "* * * where the more favorable evidence relied on by a party to overcome the effect of his own self-injurious statement is in his own testimony, no distinction is drawn as compared with the situation where the curative evidence is from other witnesses. It is still for the trier of fact to decide the issue upon all the evidence." Insofar as our holding in McCleneghan v. Powell, 105 Neb. 306, 180 N. W. 576, is in conflict therewith the same is overruled.

Specification No. 6 is merely a conclusion and, in fact, states the issue of sole proximate cause as pleaded, that is, it states the accident was due entirely to negligent conduct on the part of Gladys Naber and unavoidable insofar as the defendant was concerned. We do not think it should have been given in this form as it really relates itself to no specific conduct on the part of Gladys Naber to which the jury could direct its attention insofar as her conduct being negligent is concerned. As stated in

Parker v. Womack, 37 Cal. 2d 116, 230 P. 2d 823: " '* * *; if the accident was inevitable or unavoidable that is the same thing as to say that the defendant was not negli-' gent, or that his negligence, if any, did not cause the accident. In other words, it is to say that the plaintiff has failed in his proof.' (Jolley v. Clemens, 28 Cal. App. 2d 55, 72, 73 (82 P. 2d 51) * * *.)" However, we do not think it was prejudicial in view of our holding as to specifications Nos. 1 and 5, both inclusive.

Plaintiff complains of instruction No. 17 given by the trial court. This instruction relates to the duty of one reaching an intersection and having the right-of-way. It properly states the rule in regard thereto as we have hereinbefore set out the duties under such circumstance. Under the factual situation disclosed by the evidence adduced the jury could find it had relation to either Gladys Naber or defendant and it is so worded. We do not think the fact that the masculine pronoun was used in any way limits the application thereof since the language used is general in its nature.

Plaintiff complains of the court's instruction No. 11 which relates to speed. The complaint is that the instruction does not include all of the elements of statutory provisions with reference thereto and all limitations thereon. We think the instruction covers the situation here presented for the question primarily involved is whether or not driving into the blind intersection at 30 miles an hour was negligence under all the circumstances relating thereto. We have held that: "Various factors, such as skid marks, distance traveled after impact, and force of impact, constitute pertinent evidence in arriving at an estimate of the rate of speed of an automobile, either by those involved in an accident or those in authority investigating the accident immediately thereafter." Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701. This rule relates specifically as to what facts may be shown as they can be said to bear on the question of speed, that is, what is reasonable

and prudent under the conditions existing at the time. See §§ 39-723 and 39-7,108, R. R. S. 1943. However, the various factors need not be set out in an instruction relating to speed but are sufficiently covered by that part of the instruction referring to "all the circumstances" relating thereto. An instruction on speed should always contain all material applicable limitations and qualifications thereon as contained in statutes or ordinances as they relate to the factual situation with which a jury is confronted. However, those limitations and qualifications contained therein which have no relation to the situation at hand need not be included. See Harding v. Hoffman, *supra*. We think this instruction, under the situation disclosed by the record, adequately covered the limitations and qualifications of the statutory provisions here applicable.

Plaintiff complains of the two provisions of instruction No. 12 which deal with statutory duties of drivers at intersections. In view of our holding that the jury, under the evidence adduced, could have found that the car being driven by either defendant or Gladys Naber was the first to enter the intersection, we think there was nothing wrong with either paragraph of this instruction of which plaintiff is critical. They correctly set forth the statutes that have application here. See §§ 39-728 and 39-751, R. R. S. 1943. It is true that one paragraph of the instruction uses the pronoun "he" whereas here one of the drivers was a woman. However, they are quotes from the statutes and general in their character, and we do not believe the jury could possibly have been mislead thereby. We think, under the evidence adduced, that Gladys Naber, because of the manner in which she was driving, could have been found by the jury to have forfeited her right-of-way if the jury came to the conclusion that she was driving at an unlawful rate of speed. See § 39-7,108, R. R. S. 1943.

Plaintiff complains that on cross-examination of de-

fendant her counsel was improperly limited. This relates specially to objections sustained by the trial court when defendant was asked how far it would take him, while going 40 miles an hour on a gravel road, to bring his car to a stop. While defendant testified he had driven a car for some years, and was entirely familiar therewith, he stated he had never made such a test about which he was here asked to testify. Under this situation any answer he could have given must necessarily have been a guess. We do not think the trial court erred in its discretion by sustaining the objection in view thereof. It is true that in Blado v. Draper, 89 Neb. 787, 132 N. W. 410, we held: "It is not reversible error to permit a witness, who is well skilled in the use of automobiles and is accustomed to handling and driving them, to testify as to the distance in which such a machine may be stopped when going at different rates of speed, where on the trial of a cause that question is or may become material." But that does not necessarily mean that any witness familiar with automobiles can be forced to make a guess in regard thereto when he has not only not testified in regard thereto but has, in fact, testified he has had no experience on which to base his answer. Although a wide latitude should ordinarily be given counsel on cross-examination to bring out any facts bearing upon the cause of the accident, however, such rule must necessarily have some limitation. See, Zimmerman v. Lindblad, 154 Neb. 453, 48 N. W. 2d 415; Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381.

In view of what we have said and held herein we think the trial court erred in setting aside the jury's verdict and granting the plaintiff a new trial. We therefore set aside the judgment of the trial court doing so and remand the cause to it with directions to reinstate the verdict and enter a judgment thereon for defendant.

REVERSED AND REMANDED WITH DIRECTIONS.