ROBERT D. MORFORD, APPELLANT, V. LIPSEY MEAT COMPANY, INC., A CORPORATION, APPELLEE.

138 N. W. 2d 653

Filed December 10, 1965. No. 35997.

Martin A. Cannon, for appellant.

Gaines, Spittler, Neely, Otis & Moore, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SMITH, J.

This is a negligence action in which a jury awarded $20,000 for personal injuries to plaintiff. The district court sustained defendant's motion for a new trial. On appeal defendant argues that the interlocutory nature of the order for new trial and a defective notice necessitate dismissal of the appeal and that the jury awarded excessive damages appearing to have been given under the influence of passion and prejudice.

An order granting a new trial in a civil action is appealable. § 25-1315.03, R. R. S. 1943. Its interlocutory nature is immaterial if the new trial will involve reexamination of an issue of fact. See, § 25-1142, R. R. S. 1943; Otteman v. Interstate Fire & Cas. Co., Inc., 171 Neb. 148, 105 N. W. 2d 583.

Plaintiff filed notice of his intention to appeal the cause to this court, but he omitted specific description of the order appealed from. "The proceedings to obtain a reversal * * * of * * * orders (granting new trials) * * * shall be by filing * * * a notice of intention to prosecute such appeal * * *." § 25-1912, R. S. Supp., 1963. The statute was designed to simplify the steps which give this court jurisdiction of the cause and all parties in the district court. Madison County v. Crippen, 143 Neb. 474, 10 N. W. 2d 260. The text of the notice conveyed an intention too clear for misunderstanding. It complied with the statute.

In the general verdict the jury must have included a substantial amount for permanent injury to plaintiff's back and for loss of future earnings. The folly is said to have been the disregard of plaintiff's preexisting physical condition and of his meager preaccident income.

Plaintiff, who was approaching 43 years of age with a negative medical history at the time of the accident, was a self-employed concrete and block mason. He also constructed homes through subcontractors, except that he himself physically performed the masonry. He lifted concrete blocks which weighed 36 pounds apiece, and he moved wheelbarrows which contained concrete mixture. The labor was hard.

On October 10, 1962, defendant's backing truck struck plaintiff's left knee. The blow spun him around and his back contacted a post. Feeling leg pain, he promptly complained to his physician, a general practitioner.

Two days later plaintiff experienced pain in the lower right side of his back, which had not been under stress in the interim. He tried to work until November 12, 1962, when he revisited his doctor, who diagnosed lumbosacral strain. One of several surgeons who later examined plaintiff thought that there was no serious orthopedic involvement.

From an examination on March 26, 1964, Dr. W. R. Hamsa, an orthopedic surgeon, found that the lumbar

spine showed close to 75 percent of normal motion. Tests produced pain in the lumbosacral joint, in the midline one space above, and over the buttock-muscle attachment on the right side.

X-rays showed an incomplete fusion of the first sacral vertebra with the rest of the sacrum. Short muscles in front of the thigh caused an abnormal pelvic tilt. This congenital or developmental condition made the spine susceptible to injury.

Dr. Hamsa diagnosed chronic strain of the lumbosacral joint and the left sacral-spinalis muscle. Concluding that plaintiff had a decreased ability to bend, to lift weights, or to carry objects, he estimated a 10 to 15 percent permanent partial disability of the back as a whole.

Dr. Hamsa related the origin of the strain to the accident. As a rule, such a congenital condition will not cause disability in the absence of stress. If impairment had resulted from hard labor, he would have expected slightly different evidence with respect to areas of tenderness remaining at the late date of his examination.

The evidence sustains a finding that the accident caused plaintiff's disability. Prior to that time the congenital or developmental condition neither produced pain nor impaired function. A negligent defendant may be liable for bodily harm to plaintiff, although the injury is greater than usual due to a physical condition which predisposed plaintiff to the injury. See Nownes v. Hillside Lounge, Inc., *ante* p. 157, 137 N. W. 2d 361.

Past earnings, which were shown in the income tax returns of plaintiff, were small, varying from $1,038.40 to $4,238.56 annually between 1959 and 1963. The sums represented total income without allocation between subcontracting and physical labor, but plaintiff testified generally that the subcontracting business had not been successful, a conclusion fairly obvious. During seasonable weather he labored 8 hours or more daily as a mason, usually attending to the subcontracting business

in the evening. The prevailing hourly wage scale for a concrete and block mason rose from $3.50 or $3.80 in 1961, to $4.40 in 1964.

From January 1964 to the trial plaintiff netted $360 monthly for doing light maintenance work in rental units of a real estate company. His income was greater than it had been before the accident. He desisted from masonry because of physical injury, but he desisted from housebuilding because of financial injury.

Future loss of earnings is not necessarily measured by plaintiff's calling or income at the time of injury. See Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891. The tax returns challenged indirectly plaintiff's skill and industry in masonry, but the jury may have seen consequences of business risk. Plaintiff answered incorrectly some material questions, but his credibility went merely to the weight to be given his testimony by the jury. The verdict bears a reasonable relationship to the damage, and it should be upheld on appeal. See Hert v. City Beverage Co., Inc., 167 Neb. 557, 94 N. W. 2d 27.

The order of the district court sustaining the motion for a new trial and setting aside the verdict of the jury is reversed and the cause is remanded with directions to reinstate the verdict and judgment thereon.

REVERSED AND REMANDED WITH DIRECTIONS.