AIME LEMIEUX, APPELLEE, v. PRESTON LEE SANDERSON, APPELLANT.

142 N. W. 2d 557

Filed May 13, 1966. No. 36167.

Swenson, Erickson & Nelson, for appellant.

Kelley, Grant & Costello and Michael J. Dugan, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and BURKE, District Judge.

CARTER, J.

The plaintiff brought this action to recover for personal injuries and property damages resulting from an automobile collision between his automobile and that of the defendant. The trial court sustained plaintiff's motion for a directed verdict on the question of liability and submitted only the question of the amount of plaintiff's damages. The jury returned a verdict for $9,652.99 in favor of the plaintiff. The defendant has appealed.

The collision occurred on July 17, 1963, at about 9 a.m., at the intersection of Forty-first and Saratoga Streets in Omaha. Both streets were two-way streets about 25 feet wide. Plaintiff was driving his automobile south on Forty-first Street. It was a bright, sunny day, and the streets were dry. The evidence is that plaintiff approached Saratoga Street at a speed of 10 miles an hour. He was driving up a moderate incline. When he was about 10 feet from the north edge of the intersection he looked to the west, his right, and then to his left. He saw no traffic in either direction. His vision was limited by a bank and tree on the northwest corner of the intersection. At a point 10 feet north of the north edge of the intersection plaintiff could see 35 to 40 feet west on Saratoga Street. He saw no automobile when he looked at that point. He proceeded into the center of the intersection where his automobile was struck broadside by defendant's automobile coming from the west on Saratoga Street. The evidence further shows that Forty-first Street was protected by Yield Right of Way signs on Saratoga Street.

The evidence of defendant is that he lived near the middle of the block west of the intersection. He, accompanied by his wife, drove away from their home in their standard-shift automobile and when he reached the incline down to Forty-first Street he lifted his foot from the accelerator and coasted slowly down to the intersection. He testified that he watched to the left until he was within a car length from the west edge of

the intersection where he could see one or two car lengths to the north of the intersection. He saw no traffic coming. He then looked right and saw no one. When he looked back to the left plaintiff's automobile was right in the middle of the intersection immediately in front of him. He struck the automobile and stopped almost immediately. Plaintiff's automobile struck the east curb of Forty-first Street and traveled about 15 feet beyond the intersection. Defendant said that he did not see plaintiff's car until just before the impact in the middle of the intersection.

The applicable ordinance provides: "RIGHT OF WAY BETWEEN VEHICLES. (c) The driver of a vehicle approaching a YIELD RIGHT OF WAY sign shall yield right of way to all vehicles approaching from the right or left on the intersecting street which are so close as to constitute an immediate hazard. (d) Any driver involved in a collision at an intersection or interfering with movement of other vehicles after driving past a YIELD RIGHT OF WAY sign is deemed prima facie in violation of this section." § 35.28.140, Omaha Municipal Code.

Plaintiff alleged that defendant was negligent in failing to yield the right-of-way, in failing to keep a proper lookout, and in failing to keep his automobile under proper control. Defendant denied any negligence on his part and asserted that the sole and proximate cause of the accident was the contributory negligence of the plaintiff, which was more than slight. No specific acts of contributory negligence were charged or proved by the defendant.

The trial court sustained the plaintiff's motion for a directed verdict on the issue of liability. The defendant asserts this was error.

The defendant in this case testified that he approached Forty-first Street at a slow rate of speed. He knew of the Yield Right of Way sign. He knew that his vision was limited to the north. When he was a car length

from the west edge of the intersection he looked to the north and could see one or two car lengths north of the north edge of the intersection. He did not look again until plaintiff's automobile was in the center of the intersection. It was then too late to avoid the collision. The plaintiff approached from the north and entered the intersection at a speed of 10 miles an hour. Defendant failed to yield the right-of-way to plaintiff as he was required to do. Plaintiff under these circumstances was of necessity within the range of danger and the duty was thereby imposed upon defendant to yield the right-of-way and avoid the accident. He failed to see the plaintiff's automobile until it was in the center of the intersection. Defendant failed to respect plaintiff's right-of-way and was negligent as a matter of law. Defendant's evidence alone was sufficient to sustain the action of the trial court in sustaining plaintiff's motion for a directed verdict on the question of liability. The only reasonable conclusion that can be drawn from the evidence is that defendant was negligent.

The controlling rule is: "In a jury case involving issues of negligence where different minds may draw different conclusions or inferences from the evidence adduced, or if there is a conflict in the evidence, the matter at issue must be submitted to the jury, but where the evidence is undisputed or but one reasonable inference or conclusion can be drawn therefrom, the question is one of law for the court." Colton v. Benes, 176 Neb. 483, 126 N. W. 2d 652.

The defendant complains that the trial court erroneously instructed as to damages for pain and suffering. It is contended that instruction No. 6 does not limit future pain and suffering to such as is shown with reasonable certainty. The instruction provides in part: "If the evidence shows with reasonable medical certainty that some of the pain and injury is continuing and may in the future continue, and the duration thereof, you will consider and allow for that also." The instructions must

be considered together. We think the quoted paragraph in instruction No. 6 properly informs the jury that it may allow damages for pain and suffering only to the extent that it is shown to a reasonable certainty. It is not necessary that the admonition be repeated in every instruction. The rule is stated in Brown v. Hyslop, 153 Neb. 669, 45 N. W. 2d 743, as follows: "The meaning of an instruction, not the phraseology, is the important consideration, and a claim of prejudice will not be sustained when the meaning of the instruction is reasonably clear. If different instructions are given on the same subject they should be considered together, and if they fairly submit the case, it will not be reversed for indefiniteness or ambiguity in one of the instructions. In determining whether or not there was error in a sentence or clause of an instruction, it will be considered with the instruction of which it is a part and the other instructions, and the true meaning thereof will be determined not from the sentence or phrase alone but by a consideration of all that is said on the subject. Myers v. Willmeroth, 151 Neb. 712, 39 N. W. 2d 423; Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913." The instruction complained of clearly limits the damages for future pain to those proved to a reasonable certainty. The instruction is not objectionable on that ground.

Defendant also asserts that the instructions are erroneous in that they permit recovery twice for the same loss, in other words, that there is a duplication of one element of recovery. It is the law that a duplication of an element of recovery constitutes prejudicial error. Singles v. Union P. R.R. Co., 173 Neb. 91, 112 N. W. 2d 752. In addition to that part of the instruction heretofore quoted, the trial court instructed that if the accident aggravated or accelerated a latent or dormant condition, defendant would be liable for the whole of such result. The instruction goes to the extent of the liability and does not involve a double submission for the same element of damage. We fail to see any prejudice to

the defendant in the manner the elements of damage were submitted.

Some evidence got into the record concerning a heart condition which developed in plaintiff at some undisclosed time after the accident. No contention was made in the pleadings that the heart condition was attributable to the accident. The admissibility of the evidence was raised at the conclusion of the evidence. After discussion with the court the parties agreed that the evidence of plaintiff's heart condition should be withdrawn from the consideration of the jury and that the trial would proceed. The trial court advised the jury that the evidence of plaintiff's heart condition was withdrawn from the jury's consideration.

It is fundamental that a party may not be heard to complain of an alleged error which was corrected in a manner to which he agreed in open court. One may not waive an error, take his chances on a verdict, and when he loses, reassert the error. See, Ballantyne v. Parriott, 172 Neb. 215, 109 N. W. 2d 164; O'Dell v. Goodsell, 152 Neb. 290, 41 N. W. 2d 123; Sorter v. Citizens Fund Mut. Fire Ins. Co., 151 Neb. 686, 39 N. W. 2d 276.

Defendant alleges that the judgment for $9,652.99 is excessive. The evidence sustains a finding of $205.36 for work lost, $127.50 for tips lost, doctor bills in the amount of $241, and $628.85 for repairing his automobile; a total of $1,202.71. The balance of the judgment was for his injuries and pain and suffering from the date of the accident to the date of trial and for future pain and suffering. Any excessiveness of the verdict necessarily is in the award of $8,450.28 for the items of physical injury and pain and suffering.

The evidence shows that plaintiff went to Dr. D. H. Bendorf on the day of the accident. Dr. Bendorf found the plaintiff suffering from pains in the neck, the left shoulder, the lower back, and the lower rib area. He took X-rays and found no bone injury, fracture, or dislocations. He did find an arthritic condition of the

spine in the neck area. He found evidence of much spurring of the vertebrae due to arthritis which was present before the accident. Plaintiff received diathermy treatments to relieve pain and spasms on 15 occasions and 15 B-12 injections and medicine for internal consumption to relieve pain and headaches. The evidence shows that these pains and headaches continued from the date of the accident to the time of trial. It is the testimony of Dr. Bendorf that the arthritic condition was aggravated by the accident and that the pains and headaches resulting therefrom will continue and are permanent. Dr. Joseph F. Gross, an orthopedic surgeon, examined the plaintiff on February 24, 1964, and found evidences of pain due to cervical strain caused by the aggravation of the arthritis and resultant spurring of the vertebrae. It was the opinion of Dr. Gross that the pain would continue for an indefinite time into the future, that the headaches would continue intermittently into the future, and that in his opinion the injuries aggravating the arthritic condition are permanent.

The plaintiff was 57 years of age at the time of trial with a life expectancy of about 18 years. He and his wife both testified that he had been in excellent health and he testified he had never been to a doctor since he broke an arm when he was 7 years of age. He had no knowledge of his arthritic condition or the spurring of his vertebrae until after the accident. Both doctors testified that it was the aggravation caused by the accident that caused the pains and headaches which he has suffered and will suffer indefinitely into the future.

The amount of damages for pain and suffering, both that suffered and that which will reasonably be suffered in the future, is peculiarly for the determination of the jury. There is no yardstick by which damages for pain and suffering can be measured and compensated. If the verdict of the jury bears a reasonable relationship to the injuries sustained, the court will not disturb it. Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60

N. W. 2d 643; Morford v. Lipsey Meat Co., Inc., 179 Neb. 420, 138 N. W. 2d 653. We find no basis under the evidence for interfering with the verdict of the jury on the ground of its excessiveness.

We find no prejudicial error in the record. The judgment is affirmed.

AFFIRMED.